# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**JEROME SCOTT,**

    Plaintiff,

v.                                                                      Civil Action No. 2:18-CV-55
                                                                       (BAILEY)

**UNITED STATES OF AMERICA,**

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is the defendant's Motion for Summary Judgment [Doc. 45], filed December 17, 2018. This matter is now ripe for decision. For the reasons set forth below, this Court will grant the Motion.

## BACKGROUND

Plaintiff Jerome Scott is currently a federal inmate incarcerated within the Federal Bureau of Prisons ("BOP"). Scott claims that on April 1, 2017, while at the United States Penitentiary in Bruceton Mills, West Virginia ("USP Hazelton") he was raped by another inmate after officers purposely unlocked his cell door. He reported the alleged rape on June 16, 2017. The Special Investigative Services ("SIS") Lieutenant, Jamie Canfield, interviewed Scott the same day as the report [Doc. 46-2 at 3]. Lt. Canfield's Declaration [Doc. 46-2] states that, in the interview, Scott claimed officers were the ones that raped him. Scott told Lt. Canfield that he believed he had been raped because he woke up to the sound of staff unlocking his cell door and he felt pain in his anus. Scott told

1

Lt. Canfield "you can check the cameras and see." [Doc. 46-2 at 3]. Scott claims he changed the story of who allegedly raped him because he was scared.

Lt. Canfield reviewed the video footage of April 1, 2017 from 12:00 a.m. to 8:00 a.m. Lt. Canfield states that no time during this eight hours did footage show any officer unsecuring Scott's cell or anyone (officer or inmate) entering his cell. Further, the range was on lockdown. The footage has since been deleted due to USP Hazelton's video-recording system.[1] A senior special agent from the Office of the Inspector General ("OIG") contacted SIS regarding similar allegations Scott presented to their office. Lt. Canfield told OIG that the video footage was reviewed and that Scott's accounts of the event had changed multiple times. OIG did not open its own independent investigation.

Scott had exhausted his administrative remedies through the BOP. He asked for compensation for the injuries and that his anus suffered permanent damage. The BOP denied the claim and "found no evidence of a compensable personal injury due to the negligence" of the BOP and there was "no evidence staff caused you to be assaulted, or ignored any assault." [Doc. 46-1 at ¶ 8].

Scott filed his instant Complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28. U.S.C. § 2671, *et seq.* Scott alleges deliberate indifference and intentional infliction of emotional distress claims. He requests $9,400,000 in damages for "physical pain, psychological disorders, mental and emotional suffering, permanent injuries, damage anal [sic], [and] nightmares." [Doc. 8 at 9].

---

[1] The Government states that the videotaping system continuously saves recorded data but only keeps the footage for three months. The Government claims since Scott filed his civil Complaint over a year after the incident and over three months after the SIS and OIG reviews, that the footage was deleted.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See **Celotex Corp. v. Catrett***, 477 U.S. 317, 322–23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." ***Temkin v. Frederick County Comm'rs***, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 247–48 (1986)).

However, as the United States Supreme Court noted in ***Anderson***, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also **Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing ***Stevens v. Howard D. Johnson Co.***, 181 F.2d 390, 394 (4th Cir. 1950))).

3

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

## DISCUSSION

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the Government's sovereign immunity and authorized suit under the FTCA. *Dalehite v. United States*, 346 U.S. 15, 30–31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by

4

reason of the negligence of a government employee." ***United States v. Muniz***, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. ***Medina v. United States***, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.*

Scott brings claims of (1) deliberate indifference and (2) intentional infliction of emotional distress ("IIED"). Under the liberal construction of pleadings courts are to give *pro se* litigators, this Court agrees with the Government that the deliberate indifference claim should be analyzed as a negligence claim. "Deliberate Indifference" claims are constitutional claims and would not be allowed under the FTCA. We find it proper to construe his deliberate indifference claim as negligence because Scott alleges that the Government owed him a duty to protect him, and that this breach resulted in injuries.

### I. Negligence

In order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the state in which the action accrued. In West Virginia, the plaintiff must establish three elements in a negligence

suit: (1) a duty that the defendant owes to the plaintiff, (2) a negligent breach of that duty, and (3) injuries received as a proximate result from that breach. *Webb v. Brown & Williamson Tobacco Co.*, 121 W.Va. 115, 2 S.E.2d 898, 899 (1939). The plaintiff must prove these elements by a preponderance of the evidence. *Id.* at 899. Pursuant to the FTCA, the BOP owes prisoners a duty of care that specifically requires the BOP to provide for the safekeeping, care, subsistence, and protection of all prisoners. *See* 18 U.S.C. § 4042; *Muniz*, 374 U.S. 150 (1963). Under West Virginia law, the duty of care that the BOP owes to inmates is one of reasonable care. *See McNeal v. United States*, 979 F.Supp. 431 (N.D. W.Va. 1997).

The Government argues that Scott cannot prove a breach of a duty nor has he alleged *any* evidence other than mere assertions of damages. Scott alleges that officers unlocked his door to allow him to get raped by another inmate. First he alleged that he woke up and officers left his room and his anus hurt so he assumed he was raped. Later, he told officials another inmate raped him. In the instant case he alleges in great detail that it was indeed an inmate who raped him, not an officer. The BOP reviewed footage of that night. However, the footage is not available anymore. This Court understands that *all* footage cannot be maintained, but it would have made this case much easier if the tape was preserved, especially after Scott had made these allegations to BOP and OIG staff, even if he was delayed in his official filing of his FTCA Complaint.

Lt. Canfield did review the tape, however. He stated in his declaration, under the penalty of perjury, that the video did not show anyone (inmate or prison official) enter Scott's cell. Scott claims another SIS Lieutenant, Lt. Howell, told Scott that he watched the

6

tape and saw what the inmate had done to Scott. [Doc. 8-1 at 4, Doc. 57-1 at 5]. Based on these assertions that Lt. Howell may have conflicting information, this Court ordered either party to produce a declaration of Lt. Howell concerning what he saw on the video footage. A declaration of Lt. Howell [Doc. 77] was eventually filed. In the declaration, Lt. Howell denies ever watching the video footage and denies ever making any statements to plaintiff Scott regarding the video [*Id.*]. There has been no evidence provided other than assertions and conclusory statements about the BOP breaching its duty of care. On the other hand, there are facts in the record that blatantly contradict what Scott has claimed. Scott's claim of a breach of duty must therefore fail. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

Further, Scott has provided no evidence whatsoever to prove any injuries, as required to prove the elements of negligence. He claims to have suffered permanent physical, mental, and emotional injuries. However, there is nothing in the record of any evidence such as medical reports or doctor visit receipts. Scott himself admits that he was offered psychological help, and he turned it down. There is nothing in the record that showed he sought or received medical attention. Scott does not even assert that he sought medical attention.

Therefore, since Scott has not provided any evidence of a breach of duty by the Government or any evidence of damages other than his own assertions, Scott's negligence claim cannot survive summary judgment. Summary judgment on the negligence claim is granted.

## II. Intentional Infliction of Emotional Distress

The FTCA waiver of sovereign immunity is subject to several requirements and limitations. One of those is found in 28 U.S.C. § 1346(b)(2), which provides as follows:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injuries suffered while in custody without a prior showing of physical injury.

Similarly, Section 803(d) of the Prison Litigation The form Act, codified at 42 U.S.C.§ 1997(e)(2), also predicates a prisoner's claim for mental or emotional injuries suffered while in custody on a showing of an accompanying physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury.").

As mentioned above, Scott has not provided any evidence that a sexual act was committed or that he suffered any physical injuries as a result of the Government's negligence. As a threshold matter, his claims cannot proceed under the FTCA.

Even if his claims could proceed, he has not provided evidence that his IIED claim could survive summary judgment. To prevail on an intentional infliction of emotional distress claim, plaintiffs must prove:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it

8

was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 375, 504 S.E.2d 419, 425 (1998). The burden on the plaintiff to prevail on an IIED claim is extremely high. *See Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) ("It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage."); *Keyes v. Keyes*, 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990); *Wolford v. Mountain Top Hunting Club, Inc.*, 2015 WL 7628704, at *5 (W.Va. Nov. 20, 2015). Mere negligence cannot constitute outrageous conduct. *See Courtney v. Courtney*, 186 W.Va. 597, 602, 413 S.E.2d 418, 423 (1991) ("Thus, conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.").

Scott's evidence of IIED is the same set of mere assertions with no evidence to back them up that have been discussed above in the negligence claim. The lack of evidence combined with the extremely high burden for a plaintiff to sustain an IIED claim makes it easy for this Court to make its decision. Summary judgment on the IIED claim is granted.

## CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** defendant's Motion for Summary Judgment **[Doc. 45]**. The Clerk is **DIRECTED** to enter judgment in favor of the defendant and to **STRIKE** this action from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to mail a copy to the *pro se* plaintiff.

**DATED**: July 15, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE